**WELSH, Application of, In re: WELSH, Plaintiff-Appellant, v. OHIO STATE MEDICAL BOARD et, Defendants-Appellees.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 25146.    Decided March 17, 1960.

John R. Vintilla, for plaintiff-appellant.
Mark McElroy, Atty. Genl., John A. Hoskins, Asst. Atty. Genl., for defendants-appellees.

138

By SKEEL, J.

This appeal on questions of law comes to this court from a judgment entered for the appellee by the Court of Common Pleas of Cuyahoga County in an appeal to that court from an order of the State Medical Board of Ohio denying appellant's application for the reinstatement of his certificate to practice "hydrotherapy," a limited branch of the practice of medicine. The appellant in this court alleges in his application, filed with the Board for reinstatement, that after he successfully passed the Board's examination to exemplify his qualifications to practice such limited branch of medicine as provided by law, the appellee issued to him Certificate No. 370 on January 4, 1916, authorizing him to practice "Hydrotherapy."

It is alleged that on October 3, 1933, the Board revoked his certificate, predicated upon his conviction in two cases for the unlawful practice of medicine. The convictions were had upon trial of the charges hereinafter described before Francis D. Lane, Justice of the Peace for the Township of Willoughby, Lake County, Ohio. The date of said convictions was September 23, 1932.

The appellant (applicant) introduced into evidence the transcripts of the Criminal Docket of Justice of the Peace Francis D. Lane, exemplifying the two cases of State v. P. W. Welsh, charging "Practicing medicine without license." The first case was based upon an affidavit sworn to by Walter Thurling. This affidavit is dated September 20, 1932. The second case was founded on the affidavit of Lawrence A. Dietrich, dated September 20, 1932. The docket shows that the trial of both cases was had on September 23, 1932—A. C. Knight, appearing as counsel for the defendant (Welsh). During the trial of the first case, the docket shows that the defendant (Welsh) changed his plea of not guilty to guilty and was fined $100.00 and costs and committed to the Lake County Jail in default of payment, the order being that he should be so confined until the fine and costs were paid.

The second case, according to the docket entries, was fully tried and a finding of guilty was entered after hearing all of the evidence, including that of the defendant. The defendant (Welsh) was then found guilty, fined $250.00 and costs and committed to the county jail of Lake County until the fine and costs were paid. The docket shows the constable delivered the defendant to the county jail on a separate mittimus in each case. The statements of counsel agree, and the record supports the fact, that no appeal was prosecuted from these judgments.

The application of this appellant, seeking "reinstatement" alleges that two separate actions were filed in the Court of Common Pleas of Lake County (one on July 7, 1951, and one on August 31, 1951) wherein this appellant (Welsh) was plaintiff and A. C. Knight, Justice of the Peace, and others were defendants, and where in the precipe directed the summons to be endorsed "Action for correction of records of Francis D. Lane as Justice of the Peace and of A. C. Knight, his successor Justice of the Peace, and for declaration of rights and judgment accordingly and for equitable relief." It is alleged that upon hearing of these cases

on August 27 and November 3, 1951, the Court of Common Pleas of Lake County made the following order as to the first case:

"Now, therefore, it is the order of this Court, in the case titled, 'The State of Ohio v. Paul W. Welsh,' theretofore filed in the Justice of the Peace Court of Francis D. Lane in and for Willoughby Township, Lake County, Ohio, upon the complaint of the defendant herein, Lawrence A. Dietrich, on or about September of 1932, charging said Paul W. Welsh, with having unlawfully, illegally and without license prescribing medicines and performing a tonsillectomy upon one Joseph Miller, said defendant, A. C. Knight, as Successor Justice of the Peace in and for Willoughby Township, Lake County, Ohio, is hereby ordered and directed to, forthwith, make and enter upon his records in said case to which he has succeeded as Successor Justice of the Peace, a correction of the entries thereupon, deleting and striking therefrom any and all entries thereon which read or tend to read or show an entry of a plea of 'Guilty' or a finding of guilty by the Justice of the Peace Court; that any such entries appearing upon the original records in said case are hereby vacated so that the record in said Justice of the Peace Court in said case will show a plea of 'Not Guilty' as entered by the defendant, Paul W. Welsh, and no trial or hearing had.

"Judgment is, therefore, rendered and awarded to the plaintiff, Paul W. Welsh, herein accordingly, and the relief as prayed for is granted at the costs of the plaintiff.

"It is further ordered that the Clerk of this Court shall certify a copy of this entry to the defendant, A. C. Knight, Justice of the Peace in and for Willoughby Township, Lake County, Ohio."

The Court of Common Pleas of Lake County made the following order as to the second case:

"It is, therefore, the order and judgment of this Court that. the records of Francis D. Lane, as Justice of the Peace of Willoughby Township, Lake County, Ohio, now the records of the defendant, A. C. Knight, as successor Justice of the Peace, in said case of the State v. Paul W. Welsh, upon complaint signed by the defendant, Walter Thurling, in September of 1932, be and are hereby corrected, and said defendant, A. C. Knight, Justice of the Peace, is so ordered as follows:

"Any entry appearing thereon showing a plea of guilty to the offense charged shall be stricken from the records and an entry shall be made therein showing a plea of 'not guilty' to the offense as charged; the records shall be further corrected to show 'no trial or hearing had.' Judgment is, therefore, hereby rendered and awarded to the plaintiff, Paul W. Welsh, pursuant to the provisions hereinabove set forth, and the relief as prayed for by the plaintiff is granted, at the costs of the plaintiff.

"It is further ordered that the Clerk of this Court shall certify a copy of this entry to A. C. Knight, Justice of the Peace in and for Willoughby Township, Lake County, Ohio."

The application filed with the State Medical Board of Ohio then proceeds as follows, after alleging that the successor Justice complied with the directions of the Court of Common Pleas:

"Your applicant further says that by reason of the facts herein set forth, the alleged conviction or convictions against him, which formed the sole basis for the revocation of his license to practice hydrotherapy in the State of Ohio, being now expunged from the records, in like manner as though they had never occurred or been entered, he feels, and therefore respectfully says to this Board, that he is entitled to be restored to all things which he has lost by reason of the false, fraudulent, illegal, arbitrary and injudicious entries of conviction entered upon the records of the said Justice of the Peace."

The prayer of the application is as follows:

"Wherefore, your applicant respectfully prays that this Board, iɪ the exercise of a just discretion, may consider all of the facts surrounding this applicant, and herein submitted to you, together with all other facts that may be submitted at a hearing of this application; may restore him to the practice of hydrotherapy, so that he may follow the pursuit of life, liberty, and happiness, and earn a livelihood in his chosen profession, which he has practiced for many years prior to the revocation of his license, and so that he may be better enabled to support himself, his family, and those that may be dependent upon him, and so that he may be restored to society as a useful and law-abiding citizen."

This appellant's application for reinstatement was dismissed by the Board for want of jurisdiction. Welsh then brought an action against the Board in Franklin County seeking a mandatory injunction to compel the Board to hear his application on the merits. The court granted the prayer of his petition, making the following entry:

"The State Medical Board to grant Paul W. Welsh a hearing upon his application for reinstatement of his license to practice hydrotherapy and the rights attendant thereupon and enable the plaintiff to introduce evidence at said hearing in support of said application."

Set out in this journal is the following:

"From the facts as presented, the revocation of Plaintiff's license was based solely upon the convictions in the Justice of the Peace Court. These have now been held illegal and of no effect therefore there is and was no basis for the revocation of his license to practice hydrotherapy, and while the Ohio State Medical Board had reasonable grounds to revoke so long as these convictions appeared valid, once they were declared invalid, the grounds for revocation no longer existed, and to refuse to entertain Plaintiff's application is an abuse of discretion."

The journal also provides: ·

"Ordered, that the defendants may in any proceeding subsequent hereto relative to the revocation or restoration of the license of the plaintiff to practice hydrotherapy whether by an appeal from an adjudication order of the Ohio State Medical Board or in any other proceeding in which the validity or the legality of the revocation of the license of the petitioner may be made an issue according to law may, inter alia, litigate, contest, raise and have determined the issue of the invalidity of the order of the Common Pleas Court of Lake County, Ohio, made and entered in or about August, 1951, whereunder and whereby the convictions of the petitioner before the Justice of the Peace of Willoughby

township, Lake County, Ohio, were expunged from the records of said justice; and may likewise litigate, contest, raise and have determined the issue of the jurisdiction of the Common Pleas Court of Lake County, Ohio, to make and enter such order whether or not the issue of the validity or invalidity of said order of the Lake County Common Pleas Court is the subject of an adjudication order by the Ohio State Medical Board, or is contained in the record of proceedings of said Board on an administrative appeal and it is further * * *."

The State Medical Board of Ohio then proceeded to hear the application for "Reinstatement" filed by Paul W. Welsh. The hearing was referred to a referee to take evidence as directed by the Court of Common Pleas of Franklin County and report his findings. The evidence introduced before the referee is set out in full in the record.

Among other matters, the evidence shows that in the Municipal Court of Cleveland on November 25, 1952, Paul W. Welsh was convicted on a charge of the unlawful practice of medicine. The patient was Sylvanus Vean Brown, now a resident of Pompano Beach, Florida. Brown testified of an attempted "prostate" operation performed by Welsh at the home of the patient. He said he contacted Welsh from an advertisement in the telephone directory which stated "that he (Welsh) had urinary practices for twenty-nine years and gave the date and place of his business—that's how we located him." The patient's wife testified as follows:

"Q. When Dr. Welch came to your house, did he bring his instruments in with him?

"A. Yes, he had them wrapped up in a newspaper about as large as that mike there, that thing (indicating) not wrapped with twine just newspaper. And he put it on the side of the table and unwrapped it and that was his instruments that he had, his little basins and his little cups and all the different catheters, these metal ones and this little probing machine that he done the cutting with, and all the antiseptics, bichloride, and everything except Lysol, he asked me for it and I furnished the Lysol."

The witness then described the operation and the profuse bleeding that resulted.

The record of the Municipal Court of Cleveland shows that the case was tried to a jury. The judgment entered on the verdict was appealed to the Court of Appeals of Cuyahoga County where the judgment was affirmed. When questioned about this conviction on the hearing before the referee, this appellant testified:

"Q. Do you recall that you were convicted of the illegal practice of medicine on June 8, 1953?

"A. It was illegal. Sure, I am saying it.

"Q. Were you or were you not convicted of the illegal practice of medicine on June 8, 1953?

"A. By a kangaroo court."

"* * *

"Q. Well, you practiced in 1953, when you were convicted of the illegal practice of medicine in the Municipal Court, didn't you?

"A. Well, can I correct that or put my answer in to it?

"MR. KEARNS: Well, say whether you practiced or whether you didn't.

"A. I did practice, but not for money, if you want to know, yes, that is true. I wanted to be mercy helper to people who bring me up.

"Q. And you helped a lot of people during that period?

"A. Not lots, just that guy, the one that stick me for $500, want to bribe me, take a bribery out of me. He asked me at the Court down there, he say he drop the whole thing I give him $500, that is what he wanted, money, that is the whole thing, that is the whole thing that lays out on it. I got proof of that. That is in the record down at the Court of Appeals. He came up and begged me for $500, said he'd forget the whole thing if you give it to me, that is all I want. I said, 'No, you won't get it if I go to hell.'

"Q. And you are still practicing on this charitable basis, is that correct?

"A. When?

"Q. Since 1953?

"A. No, I am not."

In explaining to the referee this appellant's understanding of what was meant to be included in the limited branch of medicine designated "Hydrotherapy," he testified:

"Q. Now, inasmuch as you were once a licensed hydrotherapist, Mr. Welsh, what is your understanding of what the science and the practice of hydrotherapy comprehends? Do you understand my question?

"A. Yes.

"Q. All right. Would you tell me     __

"A. I think I have a little idea.

"MR. KEARNS: Tell him what you know hydrotherapy to be and what you are entitled to practice.

"A. Well, my training and understanding of hydrotherapy as was trained by medical men is regular medicine and surgery, that is what it is.

"Q. Is regular medicine and surgery?

"A. That is right, that is all it is.

"Q. Thank you, sir.

"A. It is not any limit to it.

"Q. Thank you, sir.

"A. And I prove it.

"Q. Thank you, sir. And that is your understanding of your function?

"A. That is my understanding by best medical men in the world.

"Q. As a hydrotherapist?

"A. Yes, that is right.

"Q. And that is what your understanding is of what you are entitled to do as a result of being licensed to practice hydrotherapy?

"A. Yes, that is what the text book says."

This is only a part of the testimony of like character.

The Board, after considering the referee's report, made the following decision:

"The application of Paul W. Welsh for the reinstatement of his license as a Hydrotherapist came on to be considered and upon consideration of the entire record, the report and recommendations of the Referee hereinbefore appointed in this matter, the Board finds as follows:

"1. The license of the applicant, Paul W. Welsh, as a Hydrotherapist, was revoked by this Board on October 3, 1933, which revocation was affirmed on appeal to the Courts.

"2. This Board has no jurisdiction to grant or reissue a license subsequent to its revocation except upon application for and successful completion of examination for such license.

"The Board therefore finds that the application for reinstatement in this matter should be denied.

"The Board further finds that, in the event the Courts finally determine that it does have jurisdiction to grant a license on application for reinstatement subsequent to the revocation of such license without examination, then this application should be denied for the reason that the applicant was convicted in Cleveland Municipal Court on December 30, 1952, for practicing Medicine without a license.

"For the reasons stated herein, it is the order of this Board that the application of Paul W. Welsh for reinstatement of his license to practice Hydrotherapy is hereby denied."

An appeal was taken by Welsh from the foregoing decision to the Court of Common Pleas of Cuyahoga County. After making an entry on May 29, 1959, amending the record, the court, on January 21, 1960, affirmed the order of the Board. The amendment to the record is as follows:

"For good cause shown, and on motion of appellant, it is hereby ordered that the journal entries, transcripts and certificate of A. C. Knight, Justice of Peace in and for Willoughby Township, Lake County, Ohio, be and same are hereby admitted as part of the original record in this cause.

"It is hereby further ordered that the notice of appeal herein be and same is amended to correct same to show that the appeal herein is from the order of the Ohio State Medical Board of October 8, 1957, denying the application of the appellant for reinstatement of his certificate to practice hydrotherapy, and that the appeal is on questions of law on the ground that the aforesaid order of the Medical Board is prejudicially erroneous and not in accordance with law."

In this appeal from the judgment of the Court of Common Pleas, affirming the decision of the Board, the appellant claims error as follows:

"The lower court erred in affirming the order of the Ohio State Medical Board of October 8, 1957, denying the application of Paul W. Welsh for reinstatement and/or restoration of his license."

The authority of the Court of Common Pleas of Lake County to order the entries appearing on the docket of a justice of the peace changed in a collateral attack by action filed in such court after twenty years had passed from the date of the entries made in a criminal case

and the question of the authority of the Ohio State Medical Board to disregard such judgment entries will first be considered.

The petitions filed in Lake County, Ohio, on July 7, 1951, and August 31, 1951, seeking such change in part allege that on the 20th day of September, 1932, and prior thereto, the plaintiff was a regularly licensed practitioner of hydrotherapy (a limited branch of the practice of medicine), and that he was arrested on a warrant issued by Francis D. Lane, Justice of the Peace for Willoughby Township, Lake County, Ohio, charging him with the unlawful practice of medicine. The affidavits filed in each case set out the particulars of the offense. Welsh alleges that he pleaded "not guilty" and that at all times stood on such plea in both cases. It is alleged that the title in each of the cases filed against him was State v. Paul W. Welsh, and that after the case in which the affidavit was sworn to by Lawrence A. Dietrich, was partially heard, in which he did not waive trial by jury (although the penalty provided for such offense, was such that required a jury trial unless specifically waived) and before the completion of the trial, the justice entered upon the records an entry showing a plea of guilty. The plaintiff (Welsh) specifically denies ever having entered a plea of guilty and has always maintained his innocence. It is alleged that the other case (predicated on the affidavit sworn to by Walter Thurling) was neither set for trial nor heard, that he did not waive a jury and that the record on the docket shows a plea of guilty although he has always proclaimed his innocence and did not enter such plea.

The petition further alleges that since the entries set out were made, the Justice of the Peace who made them, Francis D. Lane, died, and that his successor is A. C. Knight (the lawyer whose name appears on the docket as representing Welsh upon trials in the Justice Court).

It is alleged that because of the conduct of Francis D. Lane, Justice of the Peace, in making such unwarranted entries in the two cases, the State Medical Board permitted Welsh to practice Hydrotherapy only until August 1950, at which time the Board terminated his license to practice such profession, basing the termination solely on the records of the Justice of the Peace Francis D. Lane, which disclosed two convictions by way of pleas of guilty, and which records are erroneous and false and not true in their entirety. It is alleged that the record in both cases should be corrected, that the record of pleas of guilty should be vacated, and that the Justice, not having obtained a waiver from the defendant of a jury trial, was wholly without jurisdiction to try the case. The prayer is that the records be corrected and that judgment be rendered accordingly.

The petition in the second case, filed in the Court of Common Pleas of Lake County, on August 31, 1951, above noted, relates to the case filed in the Justice Court of Francis D. Lane upon the affidavit of Walter Thurling and duplicates the allegations set out in the petition filed on July 7, 1951. The pleader unquestionably confused the two prosecutions and duplicates many of the allegations of fact. However, pleadings in both cases are essentially as above set out, that is, that Welsh was arrested and charged by two separate affidavits with the unlawful prac-

tice of medicine, that he pleaded not guilty in each case, that he did not waive a jury trial, that in one case no trial was had but a plea of guilty is shown on the docket which he alleges he did not enter, and in the other that after trial had begun, a plea of guilty was entered which he denies having entered and that he not having waived a jury trial, the Justice Court was without jurisdiction to try such cases. The prayer in both cases is to correct the docket entries and judgment accordingly.

Personal service was had on A. C. Knight, Justice of the Peace in Willoughby Township and upon Lawrence A. Dietrich, and constructive service was had on Joseph Miller, defendants in the case filed July 7, 1951. Personal service was had on A. C. Knight as Justice of the Peace for Willoughby Township and constructive service on Walter Thurling in the case filed August 31, 1951. No answers were filed and the judgments as above set out were journalized.

The charges in both cases filed in the Justice Court against Paul W. Welsh were based on §12694 GC (now §§4731.41 and 4731.99 R. C.), prohibiting the unlawful practice of medicine. Under the provisions of §13422-3 GC (now §2931.02 R. C.), a Justice of the Peace (in effect in 1932) was given special jurisdiction to try violations of the Medical Practice Act. It provided:

"Special Jurisdiction of Magistrates

"Magistrates shall have jurisdiction within their respective counties in all cases of violation of any law relating to: * * *

"(16) The violation of laws in relation to the practice of medicine or surgery or any of its branches."

Sec. 13424-1 GC (effective July 21, 1929, which prior to January 1, 1960, was in substance contained in §2931.11 R. C., now see §2938.04 R. C.), at that time provided:

"In prosecutions before a magistrate, when imprisonment is a part of the punishment, if a trial by jury is demanded, the magistrate, not less than three days nor more than five days before the time fixed for trial, shall certify to the clerk of the court of common pleas of the county that such prosecution is pending before him. Failure to demand a jury as in this section provided shall be deemed a waiver of the same."

As thus amended, effective July 21, 1929, a defendant was required to demand a jury trial when such right was provided by law.

From the text of these sections, all in effect in 1932, a justice of the peace was vested with jurisdiction to try those charged with the illegal practice of medicine and if the penalty was such that the defendant had a constitutional right to a trial by jury, he had to demand it before the trial began on the merits or such right was deemed to have been waived. Sec. 13443 GC, providing for the right to a jury trial in all cases for the violation of a state statute, or an ordinance of a municipality, except where the fine did not exceed fifty dollars, did not become effective until June 22, 1933, so that as of the date of this prosecution in the court of Justice of the Peace Lane, a defendant was entitled by law to a jury trial only if imprisonment was a part of the penalty set out in a statute or ordinance. Sec. 12694 GC, in effect in 1932, provides the

following penalty: "* * * shall, for the first offense be fined not less than twenty-five dollars nor more than five hundred dollars, and for each subsequent offense be fined not less than fifty dollars, nor more than five hundred dollars or imprisoned in the county jail or workhouse not less than thirty days nor more than one year or both."

The charges against Welsh under §12694 GC, were set up on the docket of Justice of the Peace Lane as follows:

"Walter Thurling * * * on the 3rd day of August, 1932, at the County of Lake, one P. W. Welsh did then and there practice medicine and surgery before he, the said P. W. Welsh had obtained a certificate from the State Medical Board of Ohio to practice medicine and surgery or any of its branches except hydro-therapy which is limited to the use of water only for therapeutic purposes in the manner required by law, in this to-wit, that he, the said P. W. Welsh, did then and there examine and diagnose and did then and there prescribe, advise, recommend, administer and dispense for a compensation, to-wit, the sum of $13.00 to him paid by Walter Thurling, certain drugs, medicines and treatments, the names of which are castor oil, epsom salts, green pills, white pills, white powder and other remedies the names of which are unknown, for the cure and relief of a bodily infirmity and disease of Della Thurling, to-wit, complicated stomach and kidney trouble, all contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the State of Ohio."

"* * *

"Lawrence A. Dietrich * * * on or about the 24th day of August 1930 at the County of Lake, one P. W. Welsh, did then and there unlawfully practice medicine before he, the said P. W. Welsh, had obtained a certificate from the State Medical Board of Ohio to practice medicine or surgery or any of its branches except hydro-therapy which is limited to the use of water only for therapeutic purposes in the manner required by law in this, to-wit, the said P. W. Welsh did then and there examine, and diagnose and did then and there prescribe, advise, recommend, administer and dispense for a compensation, to-wit, the sum of $35.00 to him paid by Joseph Miller, a certain application, operation and treatment the name of which is electro-therapy and the nature of which is coagulation by electricity for the cure and relief of a bodily infirmity and disease of Joseph Miller, to-wit infected and diseased tonsils and congested nasal passages, all of which is contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the State of Ohio."

The docket contains the judgments entered in both cases as follows:

In the first case:

"September 23rd, 1932, Defendant appeared in person and by A. C. Knight, his attorney, Defendant changes his plea of not guilty and pleads guilty of practicing medicine without a certificate as set forth in the affidavit, which plea is accepted by Harold U. Daniels, Assistant Prosecutor of Lake County on behalf of the State of Ohio.

"It is, therefore, ordered the defendant pay a fine of $100.00 together with costs of this action and upon failure to pay said fine he be

confined to the Lake County Jail until the fine and costs are paid or secured to be paid or until he be otherwise legally discharged."

In the second case:

"September 23rd, 1932, Defendant appeared in person and by A. C. Knight, his attorney. Hearing had, Joseph Miller and Lawrence A. Dietrich sworn as witnesses. Upon the hearing of the testimony for the State, motion is made by defendant for dismissal. Motion overruled. P. W. Welsh sworn as witness for the defense. Upon hearing all the evidence defendant is found guilty as charged in the affidavit. It is therefore ordered that the defendant pay a fine to the State of Ohio in the sum of $250.00 and costs of this prosecution and that upon failure to pay said fine that he be confined to the Jail of Lake County, Ohio, until the fine and costs are paid or secured to be paid or until he is legally discharged."

From the foregoing record of the proceedings, the defendant was not entitled to a jury as a matter of law in the trial before Justice of the Peace Lane. Therefore, the allegations in the two petitions seeking an order to correct the record, at least to that extent, were without any legal foundation whatever and were in direct contradiction of the legal rights of the pleader. With the allegations of the right to a jury trial and all possible claims of want of due process eliminated, neither petition states a cause of action. The Justice Court had jurisdiction of the causes of action stated upon the facts stated in each affidavit. If error intervened in the trial of either case, an appeal was available to the defendant. He cannot now seek to attack collaterally the judgment in a separate action filed in the Court of Common Pleas twenty years after the case was tried, nor has the Court of Common Pleas jurisdiction to order the docket entries of a justice, setting out the steps in the trial of a case, changed on the basis of the allegations contained in the petitions filed in Lake County. The entries ordered to be made or changed on the trial docket of Justice of the Peace Lane (now deceased) ·by the Court of Common Pleas of Lake County, constituted a collateral attack not permitted where the justice of the peace was acting within his jurisdiction as shown on the face of the record and where an appeal was clearly available. In the case of **State, ex rel. Barner, v. Marsh, Clerk, 121 Oh St 321**, 168 N. E. 473, the relator, in a mandamus action filed in the Supreme Court sought an order directing and compelling the judges of the Second Appellate District and the Clerk of Courts of Lorain County to cancel and set aside a ʼjudgment rendered by the Court of Appeals of the Second Appellate District, acting in a case in the Court of Appeals in Lorain County, in the Ninth Appellate District. The relatrix had appealed a decree of divorce entered in the Court of Common Pleas of Lorain County. The Ninth District Appellate Judges requested the Judges of the Second Appellate District to hear the appeal, which they agreed to do. They sat in Columbus to hear the arguments and sent their judgment to the Clerk in Lorain County where it was journalized. Irregularity in procedure was claimed. The Supreme Court held in paragraph one of the syllabus:

"1. The Supreme Court of Ohio is without jurisdiction to entertain

a suit originally filed therein to determine the validity of a judgment entered in any court of inferior jurisdiction, the validity of which is challenged on the ground of alleged fraud in procuring the same."

See also **State, ex rel. Walke, v. Industrial Comm., 140 Oh St 311, 43 N. E. 2d 282; State, ex rel. Inland Properties Co., v. Court of Appeals of the Eighth Appellate District, 151 Oh St 174, 84 N. E. 2d 922.**

The judgments entered by the Court of Common Pleas of Lake County, directing correction of docket entries was, therefore, void and of no legal effect and the Ohio State Medical Board could not be bound by such orders when considering appellant's application for "Reinstatement."

The authority of the Ohio State Medical Board is completely circumscribed by statute. It is empowered to license applicants seeking to engage in the practice of medicine or in any of its limited branches upon a demonstration of experience and ability by examination or otherwise. They are also empowered to suspend or revoke a license based on the grounds set out in the statutes and rules properly adopted by the Board.

**Sec. 4731.20 R. C.,** provides:

"**Secs. 4731.07, 4731.08** and **§§4731.14** to **4731.28,** inclusive **R. C.,** shall govern the state medical board, all of the officers mentioned therein, and the applicants for and recipients of limited certificates to practice a limited branch of medicine or surgery. In addition to the power of the board to revoke and suspend certificates provided for in **§4731.22 R. C.,** it may also revoke or suspend the certificate of any one to whom a limited certificate has been issued upon proof of violation of the rules or regulations established by the board governing such limited practice."

There is no provision whereby the Board is empowered to reconsider an application seeking the reinstatement of a license after an order revoking a license has become final either on appeal or by reason of the failure of the licensee to appeal as provided by **§119.12 R. C.** This appellant availed himself of such right and upon appeal to the Court of Common Pleas of Cuyahoga County, on May 7, 1942, the following entry was made:

"This cause came on to be heard upon the pleadings and the evidence. After due consideration whereof the findings of the State Medical Board are sustained and this appeal is dismissed at the costs of the appellant."

The Ohio State Medical Board was, therefore, without jurisdiction to consider appellant's application for the restoration of his license to practice Hydrotherapy. Even if this were not so, the evidence presented of his knowledge of the limitations of his license and his conduct in the attempted exercise of the rights and privileges granted under such license are such as would require the refusal of such application.

This question was before the Supreme Court of Ohio wherein this appellant was the relator in the case of **State, ex rel. Welsh, v. State Medical Board of Ohio, 145 Oh St 74, 60 N. E. 2d 620.** The relator, by

petition in mandamus, was seeking a writ to command the State Medical Board to restore his license to practice Hydrotherapy which had been revoked as above set out. The court said, in denying the writ:

"BY THE COURT. Counsel for relator cite no statute requiring the State Medical Board to restore or reinstate a license which has been revoked. It is stated in the brief for relator: The question then is this: Granted that the Legislature failed expressly to endow the medical board with the powers of restitution of license after revocation, has the board implied or cognate power to do so? We believe and respectfully submit that it has.

"* * *

"We are asked to issue a writ of mandamus to command the performance of an act which is not specially enjoined by law upon the board. The writ will not issue for that purpose."

For the foregoing reasons, the judgment of the Court of Common Pleas is affirmed.

HURD, PJ, KOVACHY, J, concur.